Mr. Justice Johnson
 

 deli-ered the opinion of court; This case originates in a collision of interest and opinion, between the.stat.es of North Carolina .and Tennessee, and the United Slates,.relative to théir respective rights, in certain instances, to perfect titles to the soil of Tennessee. North Carolina, in the year 1812, issued the grant-set'up on the trial, in behalf of the plaintiff. .Both Tennessee and the United States contend, that North. Carolina has relinquished the right tb issue- such a grant. And North Carolina replies, that her cession was conditional, and that the conditi on has .been violated, or that the
 
 casus fcederis
 
 has never-arisen.
 

 The whole difficulty arises from the obscure -wording, or doubtful construction, of the act of congress of April 18th, 1806. But after comparing all the .acts of ’the respective states upon the subject, reviewing .the events which led to the passage of that act of congress, and determining the motives -which in',
 
 *534
 
 fluenced the parties in making the compact,-which the act of congress contains", we are of opinion that • an exposition may be given perfectly consistent with good faith, and leaving to North Carolina no reasonable. ground for complaint. We here, disavow all inclination, on the part of this court, to interfere, unneces-. sárily, in state aftercati.o.ns ; we enter into the considerafion of such collisiorfs only so far as to secure individual right from being crushed ’ in the shock. But in-all-such discussions the questions necessarily arise, Whát has' a state granted ? and what was the extent of *ts .power to grant? Those questions cannot be avoided.
 

 It will be recollected that the state of Tennessee . originally constituted a part of the state of North Carolina.; that* in the year 1789, the latter state mode, a cession, both. of:eoil and sovereignty, to the United States, of all the soil and country now. comprised within the limits of Tennessee; and that in the year 1796, the state of Tennessee was admitted into the union. Previous to the, act of cession, North Carolina had made title to a considerable proportion of the soil of Tennessee, under circumstances which attached the title to a designated portion of soil, so- that nothing more was pecessary to vest a complete legal title, but what, in contemplation of-her laws, was a mere formality, a survey arid grant. In other instances ■ she had issued warrants for a specified quantity, of land, hut under which the holder had not yet. definitely fixed his landmarks, so that he did not hold-
 
 land,
 
 but only the evidence of a right
 
 to acquire land.
 
 These, and several other descrip
 
 *535
 
 tiqiisof land-titles, as they, are called*, the act of eéssjonmakes provision for securing to the individual* to .the full extent' to which 'he was entitled under the laws of North Carolina. 'The words of the deed df cession are these: “W.here entries have been made; agreeably to-law, and titles under them not perfected by grant or otherwise, then, fund' in that Case, the gov-c, ernor for the'time being shall, and he is hereby required to perfect, from time to time* such titles, in such manner as if this' act had never been passed! And that all entries made b.y, or grants made to all and and everry person or persons whatsoever, agreeably to law, and in the limits hereby intended to' be ceded to'the United States, shall have the same force and effect as if-suqh,cession had not-been made; and that all and every right of occupancy and pre-emption, and every other right reserved-by any act or acts, to persons settled and ^occupying lands within the limits of the lands-hereby intended to be ceded as aforesaid shall continue to be in full force in the same manner as if the cession had not been made, and as pondilions upon which the said lands are ceded to the United States;” - and, “further
 
 it shall bs
 
 understood,” &c. making a provision for the case of persons who shall lose the. benefit of a location because of its having been laid on a place previously located, and declaring that “they should be at liberty to remove the location of such entry or entries, to any lands on which no entry has been specifically located, or on any vacant lands inclfided within the limits of the-lands hereby intended tobe, reded-”
 

 
 *536
 
 Under the North a°Carof lina of 1783 ch.. 3, ratified by the act l79o!Tch. the domáine'¿a thé vacant lands in Tennéssee,subject ftc'Tngthe choate titles created under her laws. •
 

 The act ofN. ®a™lina, grants to Tenncssci/ irrevocably, the pow tU°esP°to00anf sion act, and is confess l° bjn
 

 Thus under the act of cession; the United States held the right of soil in the vacant lands of Tennessee, qualified by the right which the state of North Carolina retained of perfecting the inchoate titles created under Jaws.
 

 the act, was passed, admitting the state of Tennessee into the unions,. congress omitted to insert . . . , , . , express provision respecting unappropriated land; on this circumstance the stat.e of'Tennessee set up e^a'm to a^ such land within her designated limits. — But still she was embarrassed in the use of her suppo- , . ^ ,. sed acquisition, by the rights which North Carolina re-°f,perfecting her own land titles, and she could' ^rom a
 
 state
 
 a cession of that right without the consent of congress. This afforded the United' * D J States ultimately the means, of’resuming, in part, the* soil'that they were supposed inadvertently to have-ceded tq-Tennessee, and was the ground work of. the* c9Íhp'acü' Svhich is exibited in the act of 1806. The state of North Carolina in the meantime has passed fiii act in 1803,. entitled' “an act to authorise the state-pf’Tehnessee .fcr perfect titles to land reserved to .this. sta*e ^y the cession act,” but expressly subject to the G°n&ress,; aod the two great objects of the: a'ct of congress of 1806, as avowed in the atle, are-“to authorize the state of Tennessee tiy .issue grants-. titles to.'certain lands therein described,. ahd to-settle'the claims to the vacant and-unappropriated lands within, the same’;” or, in other words’, to/enaTle the state .of Tennessee to. acquire the abso- r lute unqualified right, (so far as it comported with..’
 
 *537
 
 private right) of appropriating the soil -within its limits, and,-
 
 eodem,
 
 flatu, to enter into a partition of that soil with the U. States, connected with the, rights thus acquired. from North Carolina. And such in effect is the operation of. the compact-of 1806. The two con - «-feting parties- commence with drawing a line across the state, and then, stipulate that the soil tp -the Westward shall be vested-absolutely-in the United Slates, and that to th* eastward in Tennessee. Now,-, it is absurd to suppose that- when the' United States proposed to acquire-to themselves the absolute-dominion-over the soil to the westward, that- they would haye withheld that assent, without which Tennessee could not acquire it, and,, of course, could not convey it to the United' States-. The words in which the assent of congress is expressed, are. found in the- close of the 2d section; they are. thesé^ “to which’ said act the assent of congress is hereby given,
 
 so far as is mees ■ sary to carry into effect.. the¡ objects of this compact”—
 
 But these latter words, although at first view they may-appear to be restrictive, really in their operation,. as-here applied, must give -the utmost latitude to thatassent; because, nothing shdft of that latitude would give effect to the. provisions of "the compact. And upon, considering the act of North Carolina, to which they refer, it will obviously appear, that those, restrictive words were introduced with a view.to another abject. There are-several provisions of mere detailcontainedTn that act ;’these could take effect without the assent of congress,' and to those provisions these restrictive words must have had reference.
 

 
 *538
 
 The act of isoTch does not violats the ceseion act.
 

 But, it is contended, that in the very compact between the United States and Tennessee, the conditions of the act'of cession have been violated, and the state of North Carolina was authorized to re.sume her rights. Without admitting either the premises or conclusion of gj^lbis’argument, we may be permitted, to observe, that it is at least a perilous doctrine. The membérs of the , ..... , ’ „ . _ American family possess ample . means .or defence under the constitution, we hope ages to come will verify. Biit happily for our domestic harmony, the power of aggressive operation against each other is taken away ; and the difficulty and danger of applying to the contracts of independent states, the principles of the common law relative to conditions, would, if necersary, incline this court to consider words of condition, in such cases, as words of,contract. In this instance, the state of North Carolina .has asserted.the common' law right of entering for condition broken, and the unfortuna'. consequences may well be held up as a warning to others;
 

 But in this case; the words used are not words of condition. Oh the contrary the words of condition used with relation to the provision for seouring vested freehold rights are dropped and thosé applied to the other class of rights are appropriate only to stipulation or contract, rfiit shall be understood,” &c. are the words as expressed in the quotation from1 that act. All the operation, then, which can be given to the provisions of the session act, on the subject of -these' floating rights, is that of the stipulations of a treaty; and all the obligation resulting from those provisions, as. well on behalf, of the United States as' of Ten-:
 
 *539
 
 nessee, was, that it should be honourably and in good faith executed. And this has -been done. No more control has tyeen exercised over those floating claims than North Carolina might have exercised, and no obligation which North Carolina acknowledged with re gard to those rights has been violated.
 

 The injuries complained oí are, that these floating rights have been" restricted in their original range, so as not to be permitted now to be located to the.- westward of the line of demarkation, and that they have also been restricted to the eastward by the stipulations of Tennessee, to- make certain appropriations for schools. But this reasoning is founded upon two assumptions that cannot possibly be admitted, to wit: That North Carolina herself could not, if she had thought proper, have made these appropriations before the act of cession, and that after the act of . cession,, the United States could not háve.set apart any portion .of the un¿ located land for specified purposes; or, in fact, have issued any grants or warrants for unappropriated. land, until these floating claims had finally found a place of rest, after landing and embarking again a hundred times. It wouM have been nugatory under such circumstances to have made a cession of territory. These claims were not forgotten; Tennessee stipulates to make provision for them on her side of. the line, and the United States to make provision on the other side, if Tennessee cannot satisfy them; so that the whole country is in fact open to the holders of these rights; but they are only in the first instance directed; to a particular tract of country to make their selections.
 

 
 *540
 
 Carolina^*1 by partedwifhthe right to grantiforJands in Tennessee, Se before i,0!!!1""' ycty it seems, that the hojd; •®r« of such grants may re^uSsdfctfon coarte for r&i w
 

 With regard .to the objection,' that the appropriation of these landa was made to a single state, when they were expressly given for'the use of-the United States, including North Carolina, there is certainly nothing in. it; for the-erection of a ■ state, may have appeared to congress the mostbeneficial general purpose to which those lands could be appropriated; nor can the prohibition to locate warrants on the Cherokee'lands'be objected to, when it is considered that it was actually. illegal under the laws of North Carolina : and the s'tip- ■ úlation is expressly madedn subservience to .the laws 'of that state.
 

 Upon, the whole, we are decidedly of opinion,.that state of North Carolina has parted with the pow- ' er *° *ssue this grant, and, could-not vesume.it. -But niust decicie against the action óf thé nláin- -, . , . . tiff in this case, because it. restsupon that grant, it must not be interred that we think utífavourably ofhis fight: to the land. On the contrary, wé have
 
 no
 
 doubt, as far , * , v as appears in this» recofd,'of the obligation-on the Uni- - . ; ■ , f ted-States .to make provision for issuing a grant in his favour; and. in the mean time the courts of the United States are not without resources in their equity juris - diction to afford him relief.
 

 ¿Judgment affirmed.