## Asa Green, Plaintiff in Error v. The Lessee of Henry Neal, Defendant in Error.

The case of Patton's Lessee v. Easton, 1 Wheat. 276, and Powell's Lessee v. Green, 2 Peters, 240, as to the statutes of limitations of Tennessee, overruled.

In the case of Patton's Lessee v. Easton, this court, after examining the provisions of the statute of limitations of Tennessee in reference to a peaceable possession of land for seven years by virtue of a grant, or deed of conveyance founded upon a grant, and no legal claim by suit set up to the lands, say; " this question, too, has at length been decided in the supreme court for the state of Tennessee, which have settled the construction of the act of 1797. It has been decided that a possession of seven years is a bar only when held " under a grant, or a deed founded on a grant." " The deed must be connected with the grant. This court concurs in that opinion." The two cases to which the court referred were decided in 1805, and the court considered that they settled the construction of the act of 1797. But it is now made to appear that these decisions were made under such circumstances, that they were never considered in the state of Tennessee as fully settling the construction of the act. The question was frequently raised before the supreme court of Tennessee, but the construction of the two statutes of limitations was never considered as finally settled until 1828, when the case of Gray and Reeder v. Darby's Lessee was decided. In that case it has been adjudged that it is not necessary, to entitle an individual to the benefit of the statutes, that he should show a connected title, either legal or equitable. That if he prove an adverse possession, under a deed, of seven years before suit is brought, and show that the land has been granted, he brings himself within the statutes. Since this decision, the law has been considered settled in Tennessee, and there has been so general an acquiescence in all the courts of the state, that the point is not now raised or discussed. As it appears to this court, that the construction of the statutes of limitations of Tennessee is now well settled, different from what was supposed to be the rule at the time this court decided the case of Patton's Lessee v. Easton, and the case of Powell's Lessee v. Green; and as the instructions of the circuit court of Tennessee were governed by these decisions, and not by the settled law of the state; the judgment must be reversed, and the cause remanded for further proceedings.

This court have uniformly adopted the decisions of the state tribunals, respectively, in the construction of their statutes. This has been done as a matter of principle; in all cases where the decision of a state court has become a rule of property.

In a great majority of the causes brought before the federal tribunals, they are called on to enforce the laws of the states. The rights of parties are determined under these laws, and it would be a strange perversion of principle if the judicial exposition of these laws by the state tribunals, should be disregarded. These expositions constitute the law, and fix the rule of property. Rights are acquired under this rule; and it regulates all the transactions which come within in its scope.

On all questions arising under the constitution and laws of the union, this court

[Green v. Lessee of Neal.]

may exercise a revising power; and its decisions are final and obligatory on all other judicial tribunals, state as well as federal. A state tribunal has a right to examine any such questions, and to determine thereon; but its decision must conform to that of the Supreme Court, or the corrective power may be exercised. But the case is very different when the question arises under a local law. The decision of this question by the highest tribunal of a state, should be considered as final by this court; not because the state tribunal in such a case has any power to bind this court; but because, in the language of the court in the case of Shelby et al. v. Guy, 11 Wheat. 361, "a fixed and received construction by a state in its own courts, makes a part of the statute law."

If the construction of the highest judicial tribunal of a state forms a part of the statute law, as much as an enactment by the legislature, how can this court make a distinction between them? There could be no hesitation in so modifying our decisions as to conform to any legislative alteration in a statute; and why should not the same rule apply where the judicial branch of the state government, in the exercise of its acknowledged functions, should, by construction, give a different effect to a statute from what had at first been given to it. The charge of inconsistency might be made with more force and propriety against the federal tribunals for a disregard of this rule, than by conforming to it. They profess to be bound by the local law, and yet they reject the exposition of that law which forms a part of it. It is no answer to this objection that a different exposition was formerly given to the act which was adopted by the federal court. The inquiry is, what is the settled law of the state, at the time the decision is made. This constitutes the rule of property within the state, by which the rights of litigant parties must be determined.

As the federal tribunals profess to be governed by this rule, they cannot act inconsistently by enforcing it. If they change their decision, it is because the rule on which the decision was founded, has been changed.

ERROR to the circuit court of the United States for the district of West Tennessee.

Mr Grundy for the plaintiff in error; Mr Isaacks for the defendant.

The facts of the case are fully stated in the opinion of the Court, delivered by Mr Justice M'LEAN.

This writ of error is prosecuted to reverse a judgment of the circuit court for West Tennessee. An action of ejectment was prosecuted by Neal in that court, to recover the possession of six hundred and forty acres of land. The issue was joined, and at the trial, the defendant relied upon the statute of limitations, and prayed certain instructions of the court to the jury. Instructions were given, as stated in the following bill of exceptions.

"In the trial, the plaintiff introduced in evidence a grant from the state of North Carolina, dated              , to

Willoughby Williams, for the land in controversy, and deduced a regular chain of conveyances to plaintiff's lessor, and proved defendant in possession of the land in question at the time suit was brought; defendant introduced a deed from Andrew Jackson to Edward Dillon, and proved that the defendant held by a lease from Dillon; and also in support of Dillon's title, introduced evidence tending to prove that persons claiming under and for Dillon, had been more than seven years in possession of the premises in dispute, adverse to the plaintiffs: upon which the court charged the jury, that according to the present state of decision in the Supreme Court of the United States, they could not charge that defendant's title was made good by the statute of limitations."

The decision of the point raised by the bill of exceptions in this case, is one of great importance; both as it respects the amount of property which may be affected by it, and the principle which it involves.

In the case of Patton's Lessee v. Easton, which was brought to this court by writ of error in 1816, the same question, which was raised by the bill of exceptions, was then decided. But it is contended, that under the peculiar circumstances of the case now before the court, they ought not to feel themselves bound by their former decision. This court, in the case of Powell's Lessee v. Green, 2 Peters, 240, gave another decision, under the authority of the one just named; but the question was not argued before the court.

The question involves, in the first place, the construction of the statutes of limitations passed in 1715 and in 1797. The former was adopted by the state of Tennessee, from North Carolina; the third section of which provides, "that no person or persons, or their heirs, which hereafter shall have any right or title to any lands, tenements or hereditaments, shall thereunto enter or make claim, but within seven years after his, her or their right or title shall descend or accrue; and in default thereof, such person or persons, so not entering or making default, shall be utterly excluded and disabled from any entry or claim thereafter to be made." The fourth section provides, after enumerating certain disabilities, and the time within which suit must be brought, after they shall cease, that " all possessions held without suing such claim as aforesaid, shall

be a perpetual bar against all, and all manner of persons what-ever, that the expectation of heirs may not, in a short time, leave much land unpossessed, and titles so perplexed that no man will know from whom to take or buy land."

In the year 1797, the legislature, in order to settle the " true construction of the existing laws respecting seven years' possession," enact " that in all cases, wherever any person or persons shall have had seven years' peaceable possession of any land, by virtue of a grant or deed of conveyance founded upon a grant, and no legal claim by suit in law, by such, set up to said land, within the above term, that then, and in that case, the person or persons so holding possession as aforesaid, shall be entitled to hold possession in preference to all other claimants, such quantity of land as shall be specified in his, her or their said grant or deed of conveyance, founded on a grant as aforesaid." This act further provides, that those who neglect, for the term of seven years, to assert their claim, shall be barred.

This court, in the conclusion of their opinion in the case of Patton's Lessee v. Easton, say, " this question, too, has at length, been decided in the supreme court of the state. Sub-sequent to the division of opinion on this question in the circuit court, two cases have been decided in the supreme court for the state of Tennessee, which have settled the construction of the act of 1797. It has been decided, that a possession of seven years is a bar only when held " under a grant, or a deed founded on a grant." The deed must be connected with the grant. This court concurs in that opinion. A deed cannot be " founded on a grant," which gives a title not derived in law or equity from that grant, and the words, *founded on a grant*, are too important to be discarded."

The two decided cases to which reference is made above, are Lillard v. Elliot, and Douglass v. Bledsoe's Heirs. These cases were decided in the year 1815; and this court considered, that they settled the construction of the statute of 1797. But it is now made to appear that these decisions were made under such circumstances, that they were never considered, in the state of Tennessee, as fully settling the construction of the act.

In the case of Lillard v. Elliot, it seems but two judges concurred on the point, the court being composed of four; and in

[Green v. Lessee of Neal.]

the case of Weatherhead v. Douglass, there was great contrariety of opinion among the judges, on the point of either legal or equitable connexion. The question was frequently raised before the supreme court of Tennessee; but the construction of the two statutes of limitations was never considered as finally settled until 1825, when the case of Gray and Reeder v. Darby's Lessee was decided.

In this cause, an elaborate review of the cases which had arisen under the statute, is taken, and the construction of both statutes was given, that it is not necessary, to entitle an individual to the benefits of the statutes, that he should show a connected title, either legal or equitable. That if he prove an adverse possession of seven years under a deed, before suit is brought, and show that the land has been granted, he brings himself within the statutes.

Since this decision the law has been considered as settled in Tennessee, and there has been so general an acquiescence in all the courts of the state, that the point is not now raised or discussed. This construction has become a rule of property in the state, and numerous suits involving title have been settled by it.

Had this been the settled construction of these statutes when the decision was made by this court, in the case of Patton's Lessee v. Easton, there can be no doubt, that that opinion would have conformed to it. But the question is now raised, whether this court will adhere to its own decision, made under the circumstances stated, or yield to that of the judicial tribunals of Tennessee. This point has never before been directly decided by this court, on a question of general importance. The cases are numerous where the court have adopted the constructions given to the statute of a state by its supreme judicial tribunal; but it has never been decided, that this court will overrule their own adjudication, establishing an important rule of property, where it has been founded on the construction of a statute made in conformity to the decisions of the state at the time, so as to conform to a different construction adopted afterwards by the state.

This is a question of grave import, and should be approached with great deliberation. It is deeply interesting, in every point of view in which it may be considered. As a rule of

property, it is important; and equally so, as it regards the system under which the powers of this tribunal are exercised.

It may be proper to examine in what light the decisions of the state courts, in giving a construction to their own statutes, have been considered by this court.

In the case of M'Keen v. Delancy's Lessee, reported in 5 Cranch, 22, this court held, that the acknowledgement of a deed before a justice of the supreme court, under a statute which required the acknowledgement to be made before a justice of the peace, having been long practised in Pennsylvania, and sanctioned by her tribunals, must be considered as within the statute.

The chief justice, in giving the opinion of the court in the case of Bodley v. Taylor, 5 Cranch, 221, says, in reference to the jurisdiction of a court of equity, " had this been a case of the first impression, some contrariety of opinion would, perhaps, have existed on this point. But it has been sufficiently shown, that the practice of resorting to a court of chancery in order to set up an equitable against the legal title, received in its origin the sanction of the court of appeals, while Kentucky remained a part of Virginia, and has been so confirmed by an uninterrupted series of decisions, as to be incorporated into their system, and to be taken into view in the consideration of every title to lands in that country. Such a principle cannot now be shaken."

In the case of Taylor v. Brown, 5 Cranch, 255, the court say, in reference to their decision in the case of Bodley v. Taylor, " this opinion is still thought perfectly correct in itself. Its application to particular cases, and indeed its being considered as a rule of decision on Kentucky titles, will depend very much on the decisions of that country. For, in questions respecting title to real estate, especially, the same rule ought certainly to prevail in both courts."

This court, in laying down the requisites of a valid entry, in the case of Massie v. Watts, 6 Cranch, 165, say, " these principles have been laid down by the courts, and must be considered as expositions of the statute. A great proportion of the landed property of the country depends on adhering to them."

In 9 Cranch, 87, the court say, that " in cases depending

[Green v. Lessee of Neal.]

on the statute of a state, and more especially in those respecting titles to lands, the federal courts adopt the construction of the state, where that construction is settled and can be ascertained. And in 5 Wheaton, 279, it is stated, that "the supreme court uniformly acts under a desire to conform its decisions to those of the state courts, on their local laws."

The supreme court holds in the highest respect decisions of state courts upon local laws forming rules of property, 2 Wheaton, 316. In construing local statutes respecting real property, the courts of the union are governed by the decisions of the state tribunals, 6 Wheaton, 119. The court say, in the case of Elmandorf v. Taylor et al. 10 Wheaton, 152, "that the courts of the United States, in cases depending on the laws of a particular state, will, in general, adopt the construction which the courts of the state have given to those laws." "This course is founded upon the principle, supposed to be universally recognised, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government."

In 7 Wheat. 361, the court again declare, that "the statute laws of the states must furnish the rule of decision to the federal courts, as far as they comport with the constitution of the United States, in all cases arising within the respective states; and a fixed and received construction of their respective statute laws, in their own courts, makes a part of such statute law." The court again say in 12 Wheaton, 153, "that this court adopts the local law of real property as ascertained by the decisions of the state courts, whether these decisions are grounded on the construction of the statutes of the state, or form a part of the unwritten law of the state, which has become a fixed rule of property."

Quotations might be multiplied, but the above will show that this court have uniformly adopted the decisions of the state tribunals, respectively, in the construction of their statutes. That this has been done as a matter of principle, in all cases where the decision of a state court has become a rule of property.

In a great majority of the causes brought before the federal tribunals, they are called to enforce the laws of the states.

The rights of parties are determined under those laws, and it would be a strange perversion of principle, if the judicial exposition of those laws, by the state tribunals, should be disregarded. These expositions constitute the law, and fix the rule of property. Rights are acquired under this rule, and it regulates all the transactions which come within its scope.

It is admitted in the argument, that this court, in giving a construction to a local law, will be influenced by the decisions of the local tribunals: but, it is contended, that when such a construction shall be given in conformity to those decisions, it must be considered final. That if the state shall change the rule, it does not comport either with the consistency or dignity of this tribunal to adopt the change. Such a course, it is insisted, would recognise in the state courts a power to revise the decisions of this court, and fix the rule of property differently from its solemn adjudications. That the federal court when sitting within a state, is the court of that state, being so constituted by the constitution and laws of the union; and as such, has an equal right with the state courts to fix the construction of the local law.

On all questions arising under the constitution and laws of the union, this court may exercise a revising power; and its decisions are final and obligatory on all other judicial tribunals, state as well as federal. A state tribunal has a right to examine any such questions and to determine them, but its decision must conform to that of the supreme court, or the corrective power may be exercised. But the case is very different where a question arises under a local law. The decision of this question, by the highest judicial tribunal of a state, should be considered as final by this court; not because the state tribunal, in such a case, has any power to bind this court; but because, in the language of the court, in the case of Shelby et al. v. Guy, 11 Wheat. 361, "a fixed and received construction by a state in its own courts, makes a part of the statute law."

The same reason which influences this court to adopt the construction given to the local law, in the first instance, is not less strong in favour of following it in the second, if the state tribunals should change the construction. A reference is here made not to a single adjudication, but to a series of decisions

[Green v. Lessee of Neal.]

which shall settle the rule. Are not the injurious effects on the interests of the citizens of a state, as great, in refusing to adopt the change of construction, as in refusing to adopt the first construction. A refusal in the one case as well as in the other, has the effect to establish, in the state, two rules of property.

Would not a change in the construction of a law of the United States, by this tribunal, be obligatory on the state courts? The statute, as last expounded, would be the law of the union; and why may not the same effect be given to the last exposition of a local law by the state court? The exposition forms a part of the local law, and is binding on all the people of the state, and its inferior judicial tribunals. It is emphatically the law of the state; which the federal court, while sitting within the state, and this court, when a case is brought before them, are called to enforce. If the rule as settled should prove inconvenient or injurious to the public interests, the legislature of the state may modify the law or repeal it.

If the construction of the highest judicial tribunal of a state form a part of its statute law, as much as an enactment by the legislature, how can this court make a distinction between them? There could be no hesitation in so modifying our decisions as to conform to any legislative alteration in a statute; and why should not the same rule apply, where the judicial branch of the state government, in the exercise of its acknowledged functions, should, by construction, give a different effect to a statute, from what had at first been given to it. The charge of inconsistency might be made with more force and propriety against the federal tribunals for a disregard of this rule, than by conforming to it. They profess to be bound by the local law; and yet they reject the exposition of that law, which forms a part of it. It is no answer to this objection, that a different exposition was formerly given to the act which was adopted by the federal court. The inquiry is, what is the settled law of the state at the time the decision is made. This constitutes the rule of property within the state, by which the rights of litigant parties must be determined.

As the federal tribunals profess to be governed by this rule, they can never act inconsistently by enforcing it. If they

[Green v. Lessee of Neal.]

change their decision, it is because the rule on which that decision was founded has been changed.

The case under consideration illustrates the propriety and necessity of this rule. It is now the settled law of Tennessee, that an adverse possession of seven years under a deed for land that has been granted, will give a valid title. But, by the decision of this court, such a possession, under such evidence of right, will not give a valid title. In addition to the above requisites, this court have decided that the tenant must connect his deed with a grant. It therefore follows, that the occupant whose title is protected under the statutes, before a state tribunal, is unprotected by them, before the federal court. The plaintiff in ejectment, after being defeated in his action before a state court, on the above construction, to insure success has only to bring an action in the federal court. This may be easily done by a change of his residence, or a bona fide conveyance of the land.

Here is a judicial conflict, arising from two rules of property in the same state, and the consequences are not only deeply injurious to the citizens of the state, but calculated to engender the most lasting discontents. It is therefore essential to the interests of the country, and to the harmony of the judicial action of the federal and state governments, that there should be but one rule of property in a state.

In several of the states, the English statute of limitations has been adopted, with various modifications; but in the saving clause, the expression "beyond the seas," is retained. These words in some of the states are construed to mean "out of the state," and in others a literal construction has been given to them.

In the case of Murray's Lessee v. Baker et al. 3 Wheaton, 540, this court decided, that the expressions "beyond seas," and "out of the state," are analogous; and are to have the same construction. But, suppose the same question should be brought before this court from a state where the construction of the same words had been long settled to mean literally *beyond seas,* would not this court conform to it? And might not the same arguments be used in such a case, as are now urged against conforming to the local construction of the law of Tennessee. Apparent inconsistencies in the construction

[Green v. Lessee of Neal.]

of the statute laws of the states, may be expected to arise from the organization of our judicial systems; but an adherence by the federal courts to the exposition of the local law, as given by the courts of the state, will greatly tend to preserve harmony in the exercise of the judicial power, in the state and federal tribunals. This rule is not only recommended by strong considerations of propriety, growing out of our system of jurisprudence, but it is sustained by principle and authority.

As it appears to this court, that the construction of the statutes of limitations is now well settled, differently from what was supposed to be the rule at the time this court decided the case of Patton's Lessee v. Easton, and the case of Powell's Lessee v. Green; and as the instructions of the circuit court were governed by these decisions, and not by the settled law of the state; the judgment must be reversed, and the cause remanded for further proceedings.

Mr Justice BALDWIN dissented.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of West Tennessee, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said circuit court in this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.