## MARY T. CLARK, Respondent v. PLEASANT PORTER, Appellant.

**St. Louis Court of Appeals, October 21, 1901.**

1. **Promissory Note: PLACE WHERE PAYABLE: LAWS OF AR-KANSAS: NEGOTIABLE NOTES.** In the case at bar, the notes sued on were executed in the Indian Territory, where, for judicial purposes, the laws of Arkansas prevailed; and, as they were made payable at a bank in Fort Smith in the State of Arkansas, the laws of Arkansas with respect to their negotiable quality therefore control.

2. ———: ———: ———. Under the laws of Arkansas, the addition to a promissory note containing the negotiable words of the law merchant, the following clause, to-wit, "And in the event of this note being collected by suit at law I agree to pay an attorney's fee of ten per cent of the amount of the principal and interest due," does not destroy or impair the negotiable quality of the note.

3. ———: ———: ———: **INNOCENT PURCHASER: FRAUD.** In the case at bar, plaintiff being an innocent purchaser of the notes for value before their maturity, was entitled to recover regardless of the defense of fraud in their procurement, and for failure of consideration.

4. **Pleading: JUDGMENT: FINDING OF JURY: ERROR.** It is error for the jury to find and assess an aggregate sum in gross, due on two notes, when the petition contains two counts.

5. ———: ———: ———: **PRACTICE, TRIAL: PRACTICE, APPEL-LATE.** But the defendant can not avail himself of the error in the appellate court unless the attention of the trial court was called to it by his motion for a new trial or in arrest of judgment.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

Clark v. Porter.

## STATEMENT OF THE CASE.

The Supreme Court, in its opinion remanding this case to this court, made the following statement of the facts, which we adopt as our own, to-wit:

"This is an action upon two negotiable promissory notes for five hundred dollars each, with eight per cent interest, dated May 1, 1891, executed at Muscogee, Indian Territory, by the defendant to the order of R. L. Duval, by him indorsed before maturity to the plaintiff, and payable at the Merchants Bank, in Fort Smith, Arkansas. The petition is in the usual form. The answer is a general denial, with two special defenses; first, that the notes were procured by fraud, and that there has been a total failure of consideration, and second, that the notes were given for a purchase of the right to use a certain patent within the Indian Territory, Oklahoma, and a portion of Arkansas, which Duval and his associates claimed to own, and under the laws of Arkansas, they were subject to all the defenses that could have been made against them if they had remained in Duval's hands. The fraud charged in the first special defense is that he and his associates represented to the defendant and others that they owned the right to operate and to form companies to operate a certain patent for the successful construction and growth of a certain hedge fence, theretofore known to the people as a common osage orange fence; Duval induced defendant and others to subscribe for stock in a company to be organized by him for such purpose, and caused defendant to execute the notes sued on in payment for his subscription to the stock of the company upon a representation and agreement that the notes were not to be negotiated and that the business would be so profitable that none or only a small part of the notes would ever have to be paid; that Duval and associates never owned any such patent or right under such patent; nor was the growing

of an osage orange fence patentable; that the plaintiff took the notes with full knowledge of all these facts and hence she is not a bona fide purchaser for value.

"The reply is a general denial of the special defenses set up in the answer, with two special matters of avoidance thereof, first, that in January, 1891, she purchased for value and without notice, before their maturity, three promissory notes for one thousand dollars each, executed by defendant to the order of R. L. Duval, and by him indorsed to George B. Graham; that in April or May, 1891, 'in order to carry out and effectuate, as she is informed and believes to be true, a compromise, adjustment of certain business transactions between the defendant and the said Duval (of which she has no knowledge and to which she was in nowise a party and in no way related)' the defendant undertook and did execute and deliver to the said Duval his three certain promissory notes of date May 1, 1891, and of which the notes here sued on are two, in order that he might use the same in taking up and obtaining the surrender of the first three mentioned notes so executed and delivered by the defendant as aforesaid, in order that the said Duval could, in pursuance of such compromise adjustment as aforesaid, surrender the same to the defendant; that thereafter, in pursuance of the said agreement between the said Duval and the defendant, and for the purpose thereof, said Duval offered her in consideration of the sum of five hundred dollars and in further consideration that she would surrender the said notes of the defendant so held by her and acquired by her as aforesaid, to him to be delivered to defendant as aforesaid, and herein sued on, which said offer or proposition, she thereupon in good faith accepted and thereupon and as contemporaneous acts, she surrendered to the said Duval, the said three notes of the defendant so owned, acquired and held by her as aforesaid,

to be surrendered by him to the defendant as aforesaid, and he delivered to her, among such new notes, sued on in this cause, duly indorsed by him before maturity thereof, and immediately thereafter delivered, as she is informed and believes and charges to be true, the three said notes for one thousand dollars each, surrendered by the said Duval as aforesaid to the said defendant, who since then has been and now is in possession of same as she avers.'

"'2. For reply to the second paragraph of the amended answer herein, plaintiff says it is not true and she therefore denies that the notes herein sued on were given for the purchase or payment of the right to use a certain patent as in said second paragraph alleged. Plaintiff says it is true that said notes are payable in said State of Arkansas but she denies that under the laws in force in said State they are liable in the hands of this plaintiff to all of the defenses, which the makers thereof have against the original payee as defendant therein alleges; she denies that said note had its inception in fraud or that the consideration for same has failed.'

"There is no substantial conflict in the evidence as to the origin, or consideration for the notes. Duval represented to the defendant and others in the Indian Territory that he owned a certain patent for an osage orange fence, and induced persons to subscribe for stock in a proposed company to operate the patent, and to give their notes in payment for their stock subscriptions upon his promise not to transfer the notes, but to furnish the working capital for making the enterprise a success. No company was organized and no fences constructed, but the notes were negotiated. The defendant subscribed for three thousand dollars worth of stock, and gave three notes of one thousand dollars each therefor. Thereafter the plaintiff, who had lately received an inheritance mostly in the shape of five per cent bonds from the East, was looking for a home in Missouri.

She met Graham, an accomplice of Duval, on a train. He induced her to buy notes so executed, defendant's among them, to the amount of five thousand dollars, she paying therefor thirty-five hundred dollars. She did not know anything about the solvency of any of the makers of the notes, and says she had never seen a promissory note before, but as her bonds drew only five per cent and as the notes drew eight per cent, and as she was getting the notes for fifteen hundred dollars less than their face value, she made the exchange and purchase. She was afterwards approached by Graham and told that there was trouble about the matter, the people were dissatisfied about the company and that there would probably be a lawsuit over it, and asked her to lend her notes to Duval so he could compromise the matter with the makers of the notes. She refused at first, but when Duval himself saw her about it and promised to give her $500 and the three new notes of the defendant for $500 each, she consented to the arrangement, delivered the three one thousand dollar notes to Duval to be by him surrendered to the defendant, and thereafter accepted in lieu thereof the three five hundred dollar notes made by the defendant, of which the two notes sued on herein were a part. This compromise or adjustment was caused by the people, whom Duval had induced to subscribe for stock originally, raising a row about the fraud he had perpetrated on them, in not organizing any company or building any hedge fences, and in negotiating the notes they had given him. The compromise consisted of Duval returning the original notes, and letting the subscribers off with one-half of their subscriptions, taking new notes for the other half, and organizing a company under the laws of Arkansas. No patent osage hedge fences were ever constructed, however.

"On the ninth of April, 1891, the statutes of Arkansas were amended so as to provide as follows:

" 'Sec. 492. Nothing in the preceding section shall apply

Clark v Porter.

to a bill of exchange or negotiable note transferred in good faith and for value before maturity, but such instrument shall be governed by the rules of the law merchant concerning commercial and negotiable paper. Provided, the payer and drawer in all notes, drafts and bills of exchange executed or drawn in payment of any patent right or patent right territory shall be permitted to make all defenses against any assignee, indorser, holder or purchaser of such note, draft or bill of exchange that could have been made against the original payee or drawee whether such note, draft or bill of exchange be assigned or transferred before maturity or not.

" 'Sec. 493.    Any vendor of any patent right machine, implement, substance or instrument of any kind, or character whatsoever, when the said vendor of the same effects the sale of the same to any citizen of this State on a credit, and takes any character of negotiable instrument, in payment of the same, the said negotiable instrument shall be executed on a printed form, and show upon its face that it was executed in consideration of a patent machine, implement, substance or instrument, as the case may be, and no person shall be considered an innocent holder of the same, though he may have given value for the same before maturity, and the maker thereof may make defense to the collection of the same in the hands of any holder of said negotiable instrument, and all such notes not showing on their face for what they were given shall be absolutely void.'

"It does not appear from this record whether the patent osage orange hedge fence scheme induced the adoption of this statute by the State of Arkansas or whether its passage at that time was only a happy coincidence.

"Upon the facts so appearing the trial court of its own motion instructed the jury as follows:

" 'If the jury believe from the evidence that said notes

were bought by plaintiff, before maturity, in the due course of business, for value and in good faith on her part, she is entitled to recover and they will find for her, unless from the evidence you believe that the notes sued on were given by defendants in payment of any patent right, or patented machine, implement, substance or instrument of any kind.

" 'If from the evidence you believe that the notes sued on were given by defendant in payment of any patent right, or patented machine, implement, substance or instrument of any kind, then your verdict should be for defendant.

" 'If your verdict is for the plaintiff under the above instruction, you will find for her in the sum of one thousand dollars, with interest thereon from May 1, 1891, at eight per cent to date. If your verdict is for the defendant, you will simply so state in your verdict.

" 'The court further instructs you that the burden of proving that the said notes were given for a patent right or patented device or substance is upon the defendant, that is, that the defendant must prove by a preponderance of the evidence to your satisfaction that the notes were thus given; and by a preponderance of the evidence is meant that in your judgment the testimony to sustain the defendant's said position outweighs, in point of credibility, the testimony to the contrary.'

"The defendant saved proper exception to this charge.

"The court refused the following instructions asked by the defendant:

" 'Now comes the defendant and asks the court to give the following instruction: In this case it appears from the evidence that the notes herein sued on were for a patent right and such being the case, under the laws applicable to said notes, the plaintiff herein is not a bona fide purchaser and the defendant may make any defense to said notes that he could have made against the original payee, Duval, and if you find that the

consideration for said notes has totally failed, you will find for defendant.

" 'And now comes this defendant and moves the court to instruct the jury to return a verdict for the defendant on the whole case.

" 'If you believe that the notes herein sued on were given for a patent right, you will find for the defendant. Which the court refused and defendant objected and excepted to the action of the court at the time.'

"The jury found for the plaintiff in the sum of $1,561.33. After proper steps the defendant appealed to the St. Louis Court of Appeals. That court certified the case to this court on the ground that the case involved the construction of the Constitution of the United States, and fell therefore within the appellate jurisdiction of this court."

This case was here before. It was transferred to the Supreme Court for the reason that this court was of the opinion that the construction of a clause of the United States Constitution was raised by the record, but the Supreme Court was of a contrary opinion and remanded the case back to us for decision.

*Charles B. Stuart* and *Adiel Sherwood* for appellant.

(1) The judgment of the lower court should be reversed for the following reasons: Because the undisputed evidence shows that the notes sued upon were given for an interest in a patent right. Mansfield's Digest of Ark., p. 315, secs. 492, 493; Clark v. Evans, 40 S. W. 771. Leo Bennett, United States marshal for the Indian Territory, testified unequivocally that the notes sued on herein were given for an interest in a patent right; that upon the execution of said notes a corporation was to be formed and stock issued to the purchasers equal in amount to

their interest in the patent right.   It must be kept in mind that the court below charged the jury, and properly so, that if the notes were given for an interest in a patent right, their verdict should be for the defendant, it being undisputed that the consideration for the notes had failed.   If, therefore, there was no evidence contradicting Bennett, the judgment below can not stand.   From a careful inspection of the whole record this court will see that there is absolutely no conflict upon this point.   (2) Because the petition declares upon two separate counts and the verdict is general.   State v. Bedell, 35 Mo. App. 551; Bricker v. Railroad, 83 Mo. 391.

*W. P. Larew* for respondent.

(1)   Section 22, article 5, of the Constitution of the State of Arkansas 1868, is in force by virtue of the first clause of section 1, schedule to Constitution of Arkansas 1874.   Dyer v. Gill, 32 Ark. 410; Shinn v. Tucker, 33 Ark. 421; Lindsay v. Norrill, 36 Ark. 545; Cass v. Dillon, 2 Ohio St. 607; Cooley Const. Lim. (5 Ed.), pp. 70, 71.   (2)   If the act of the Arkansas Legislature of April 9, 1891, was a law in force on May 1, 1891, it was not operative in this case, for the reason that if plaintiff was an innocent purchaser of the original notes, for value, and if the notes sued on were renewals of the said original notes, they would be held in like manner as the original notes; and to apply the law of April 9, 1891, to such contract made in November, 1890, would be to impair the obligation of contracts, which would be a violation of the Constitution of the United States.   Black on Const. Pro., sec. 102; Story on Const., sec. 1385; Green v. Biddle, 8 Wheat. 346; Const. U. S., art. 1, sec. 10; 33 L. A. R., p. 556.   (3)   The law is well settled that a party who takes negotiable paper before due, for value, without knowledge of any defect of title,

can hold it against all the world.   King v. Doane, 139 U. S. 166, and other cases cited in Clark v. Evans.

BLAND, P. J.—The notes sued on were executed in the Indian Territory, where, for judicial purposes, the laws of Arkansas prevailed; and as they were made payable at a bank in Fort Smith in the State of Arkansas, the laws of Arkansas in respect to their negotiable quality therefore control.   Plaintiff established the fact that the notes are negotiable paper under the laws of Arkansas by reading in evidence the case of Trader v. Chidester, 41 Ark. 243, wherein it was ruled that, to add to a promissory note containing the negotiable words of the law merchant, the following clause, to-wit, "and in the event of this note being collected by suit at law I agree to attorney's fee of ten per cent of the amount of the principal and interest due," did not destroy or impair the negotiable quality of the note. Plaintiff being an innocent purchaser of the notes for value before their maturity was entitled to recover regardless of the defense of fraud in their procurement and for failure of consideration.   The defendant at the trial did not contend that the notes on their face are not negotiable, or that the plaintiff is not an innocent holder for value, but relied on sections 492 and 493, supra, to destroy the negotiability of the notes.   In respect to this defense, the court instructed the jury that if they found the notes were given for a patented machine, implement, substance or instrument of any kind, to find for the defendant. By its instructions the court assumed, as it was warranted under the evidence to do, that the notes were without consideration and were obtained by fraud.   But it was equally apparent that the notes are not affected by sections 492 and 493, supra.   The notes (for $3,000) which plaintiff first purchased were executed prior to the passage of the above sections, they being negotiable and in the hands of plaintiff as an innocent purchaser for value

before maturity, were not open to the defense of fraud or want of consideration. The enactment of the statute afterwards could not invalidate them. Ins. Co. v. DeBold, 16 How. 432; Green v. Neal, 6 Peters 297. In consideration of the surrender of these notes, the ones in suit were executed; plaintiff therefore surrendered valid notes for the notes in suit and their consideration is not for a patented right, but for the surrender of valid notes to the maker. The verdict of the jury is, therefore, supported by the evidence and is for the right party. While there are two counts in the petition, the jury made but one finding and assessed in one gross sum the amounts due on both notes. This was error. Bricker v. The Missouri Pacific Ry. Co., 83 Mo. 391; State v. Harmon, 106 Mo. 1. c. 657; State v. Bedell, 35 Mo. App. 551. But the defendant can not avail himself of the error here for the reason the attention of the trial court was not called to it by his motion for new trial, nor in arrest.

The judgment is for the right party and is affirmed. All concur.