## COLLINS v. CITY OF MEMPHIS et al.

No. 4373.

District Court, W. D. Tennessee, W. D.

Aug. 31, 1936.

Fitzhugh, Murrah & Fitzhugh, of Memphis, Tenn., for plaintiff.

William Gerber, City Atty., and Abe D. Waldauer, Asst. City Atty., both of Memphis, Tenn., for defendant City of Memphis.

MARTIN, District Judge.

The defendants, city of Memphis and its board of water commissioners, have filed a motion to dismiss an action brought by the plaintiff for damages for personal injuries for failure of plaintiff to allege in her declaration that notice of injury was given to the city of Memphis as required by chapter 55 of the Public Acts of the General Assembly of Tennessee for 1913 (section 8596, Code Tenn.1932).

The declaration avers that, while on a visit in Memphis on September 6, 1933, the plaintiff, a Mississippi lady, drove her automobile to the home of her aunt. Alighting at the curbing, she proceeded to walk across the intervening grass plot to the sidewalk and, in so doing, she stepped upon the iron top of a water meter box. She alleges that this iron top turned under her foot and caused her to fall into a deep hole inside the water meter box, as a re-

sult of which she was permanently injured.

The declaration states that the city of Memphis and its water commissioners were engaged in the business of selling water to the public, and were operating the water department for profit and gain; that the defendants owned the water meter box upon which plaintiff was injured, and negligently allowed it to remain in a dangerous and defective condition, in that the top of the box was neither locked nor fastened; that this condition had existed for a considerable period of time and was known, or should have been known, to defendants, whose duty it was to keep said meter box, located as it was in a grass plot on which the public was invited to walk, in a safe condition.

The city of Memphis contends that the plaintiff fails to show compliance with a condition precedent to the bringing of this action, because the declaration fails to show that notice of injury was given by the plaintiff, pursuant to the requirements of chapter 55 of the Public Acts of the General Assembly for 1913 (section 8596, Code Tenn.1932). The said statute is quoted in full, as follows:

"An Act entitled 'An Act to prescribe the method of bringing suit and to limit the time of bringing suit against municipal corporations on account of injuries to persons or property resulting from the negligence of the officers or employees of said municipal corporations.'

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That no suit shall be brought against any municipal corporation in this State on account of injuries received by person or property on account of the negligent condition of any street, alley, sidewalk, or highway of such municipality, unless within ninety days after such injury to the person or property has been inflicted; a written notice shall be served upon the Mayor of said municipality stating the time and place where said injury was received, and the general nature of injury inflicted. The failure to give the notice prescribed in this Act within the time set out shall be valid defense against any and all liability of the city which might otherwise exist on account of the defective or negligent condition of said street, alley, sidewalk, or highway; and provided, further, that proof of registered letter by registry receipt addressed to the Mayor setting forth the injury and place of injury complained of shall be a complete compliance with this Act.

"Sec. 2. Be it further enacted, That this Act take effect on September 1, 1913."

The plaintiff insists that this statute was not intended to apply to claims arising out of the conduct by a municipality of a private business enterprise entered into for profit and gain, and entirely outside of its ordinary governmental functions or corporate duties; that as to such injuries a municipality is liable to the same extent that a private owner, engaged in a like business, would be.

The astute attorneys for the plaintiff, in their able brief and argument, invite attention to Bank of U. S. v. Planters' Bank, 9 Wheat. 904, 6 L.Ed. 244, in which the Supreme Court of the United States, speaking through the Chief Justice, said: "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

They also quote the language of Judge Denison in Audit Co. of New York v. City of Louisville (C.C.A.6) 185 F. 349, 352: "The general rule is well established that, where a city is exercising governmental powers, it is closely limited, and clear authority for each such action must be found in the controlling general or special law of the state, but that, when it is exercising the rights of a proprietor in the management of its property, its council and officers resemble the directors and officers of a private corporation, and, in large degree, the powers of these agents and the responsibility of the city for their acts are governed by the rules applicable to private corporations."

The sound doctrine announced in these cases is not to be gainsaid; and the policy of the United States, in setting up governmental agencies in modern legislation, affords in the terms of the several statutes the right to sue the instrumentalities so created. Tennessee Valley Authority Act of 1933, § 4(b), 48 Stat. 60 (16 U.S.C.A. § 831c(b). The Reconstruction Finance

Corporation, by the terms of the act creating it, also may be sued. But the admission of this principle is not determinative against the right of government to place terms, conditions, and limitations upon the right to sue the government or its instrumentalities.

Counsel for plaintiff cite several highly respectable state court authorities, where notice statutes similar to the Tennessee act now under construction have been held of no effect in denying suit in cases where notice of injury has not been given. D'Amico v. City of Boston, 176 Mass. 599, 58 N.E. 158; Henry v. Lincoln, 93 Neb. 331, 140 N.W. 664, 50 L.R.A.(N.S.) 174; Brown v. Salt Lake City, 33 Utah, 222, 93 P. 570, 14 L.R.A.(N.S.) 619, 126 Am.St. Rep. 828, 14 Ann.Cas. 1004; Borski v. City of Wakefield, 239 Mich. 656, 215 N. W. 19; Campbell v. City of Helena, 92 Mont. 366, 16 P.(2d) 1; Safransky v. City of Helena, 98 Mont. 456, 39 P.(2d) 644, 646; Giuricevic v. City of Tacoma, 57 Wash. 329, 106 P. 908, 28 L.R.A.(N.S.) 533; McIntee v. City of Middletown, 80 App. Div. 434, 81 N.Y.S. 124; City and County of Denver v. Taylor, 88 Colo. 89, 292 P. 594, 72 A.L.R. 833; Cook v. City of Beatrice, 114 Neb. 305, 207 N.W. 518.

The first-cited case relied on by plaintiff, D'Amico v. City of Boston, supra, held that a public statute of Massachusetts, requiring notice to be given the city of any injury received by reason of a defect in a highway, does not apply to an injury received on a road over lands acquired by the city for the purpose of constructing a water basin, to be used for commercial purposes, where it had contracted to keep the road in a safe condition for travel until a permanent road was constructed, since its liability under such contract is the same as that of an individual.

Strong doubt is cast as to whether the D'Amico Case has been properly construed as the leading authority for the position taken by the plaintiff, because in a later case, Harobine v. Abbott, 177 Mass. 59, 60, 58 N.E. 284, the Supreme Court of Massachusetts, in affirming a directed verdict for the defendant, said: "This case differs materially from D'Amico v. Boston [176 Mass. 599] 58 N.E. 158. In that case the place where the plaintiff was injured had long been a public highway, and was left open for the public to be used, without notice of the discontinuance of the way, and without anything to indicate that it was no longer a public highway. It was actually in use by the public, and there was no other road open for travel between Fayville and Marlboro at that time. Moreover, the city of Boston was then under a contract with the town of Southboro to secure safe and convenient ways of travel between Southboro and the neighboring towns, and between the different parts of the town, during the progress of the work. This contract had been approved by an act of the legislature, and was binding upon the city. The conduct of the city, under these circumstances, was equivalent to a representation to the public that the road was still a public highway, and an invitation to use it as such in the expectation that it would be found safe." It thus seems apparent that the true basis of the decision in the D'Amico Case was the failure of the city of Boston to fulfill its contractual obligation to keep a discontinued highway safe.

But regardless of what would seem to be a misinterpretation by some of the courts of the real meaning of the D'Amico Case, the Michigan, Nebraska, Montana, Utah, and Colorado courts in the cases listed above, cited by plaintiff, have judicially nullified the requirement of notice in statutes where the cause of action arose from negligence of a municipality in carrying on private commercial enterprises. There has not been unanimity of opinion in all the courts which have so nullified the necessity of notice, however. For example, the sharp divergence of opinion in the Nebraska court is conspicuous in Henry v. Lincoln, 93 Neb. 331, 140 N.W. 664, 665, 50 L.R.A.(N.S.) 174.

Thus reasons the court in the majority opinion:

"As generally understood, a municipal corporation occupies a dual relation to its citizens and the public. It is bound to discharge its governmental functions. In the discharge of those functions, it stands as the representative of the state, and has all of the governmental powers conferred upon it by statute. It is also bound to perform its corporate duties. Not alone such as are expressly imposed upon it by statute, but such also as devolve upon it by reason of the governmental powers and privileges which have been conferred upon it; such as the use of reasonable diligence to keep its streets, alleys, and sidewalks in reasonably safe condition for the use of the public. In the discharge of these governmental functions, and performance of

these corporate duties, it is subject to the control of the Legislature, must assume all the burdens imposed upon it by statute, and is entitled to all the privileges, immunities, and exemptions given to it by statute. The Legislature, therefore, has a right to provide that, before it can be held liable for any dereliction of duty or for negligence on the part of its officers and employees, while it is acting in either of these dual capacities, a claim, in accordance with the provisions of the section of statute above quoted, shall be filed with its clerk within such reasonable time as it may fix. It is entitled to these privileges and immunities because of the fact that the functions and duties above referred to are imposed upon it by law, and it must discharge and perform them; but here the duties imposed upon it by law cease. It is no part of its duty, as a municipal corporation, to engage in a purely business or commercial enterprise. When it seeks and obtains from the Legislature permission to engage in such an enterprise, its act in so doing is purely voluntary on its part, and it thereby assumes a third relation, separate and distinct from the dual relations above considered. While occupying this third relation, no governmental functions or corporate duties, as a municipality, devolve upon it. It is then engaged in an ordinary business enterprise, and is bound by all the rules of law and procedure applicable to any other private corporation or person engaged in a like enterprise. It has no greater or higher privileges or immunities than are possessed by any other private corporation. It is subject to the same liabilities and entitled to the same defenses. No more and no less.

"We are not willing to indulge the presumption that the Legislature intended, by the statute quoted, to grant any special privileges to a municipal corporation, while acting in such private business capacity or relation, but rather that it intended the limitation to apply to claims against a municipality, arising out of the performance of its governmental functions or corporate duties."

Strongly dissenting, Judge Letton reasons with compelling logical force:

"I have no quarrel with the opinions with regard to the liability of a municipal corporation to its employees for its negligence while engaged in quasi private enterprises where no limitation is imposed by statute, but this is not the question before us. *The real question involved is whether the Legislature has power in creating a municipal corporation to impose conditions upon the right to maintain actions against the same.*

"The provisions of the statute under consideration in this case apply to all claims, liquidated and unliquidated, whether based upon contract or based upon the torts of the municipality. There are two lines of authorities upon this question; but the matter has already been considered by this court, and a definite principle established. The cases which have arisen have not been based upon negligence of the corporate authorities in the operation of waterworks, electric light plants, or other public service activities; but the fundamental question of the power of the Legislature to impose conditions upon the granting of the right to sue municipal corporations for any cause has been involved and determined.

"This court has held that a failure to comply with the conditions prescribed by the statute is a valid and sufficient defense against a cause of action, the right to which is guaranteed by the constitution of the state. [The dissenting Judge then reviews authorities and resumes his comments upon the power of the Legislature.] 'The power of the Legislature, however, to require notice has been generally recognized, and in many of the states a previous notice or representation of the claim is essential to the maintenance of an action against a municipal corporation, either in all cases or in certain kinds of cases. In some jurisdictions the statute requires notice in actions ex contractu only; in some it applies to all claims, whether in tort or contract; in others it is limited to injuries arising from defective streets; in others it includes personal injuries of all kinds; and in still others all actions of tort.' [The Judge is quoting from Condon v. City of Chicago, 249 Ill. 596, 94 N.E. 976.] * * *

"While the humanitarian doctrine of the majority opinion may commend itself to our sympathies, *the Legislature, in my opinion, had the power to impose the conditions, and this court should neither minimize them by attempted construction of a plain statute or depart from its former holdings. If the law is to be changed, let it be done by the Legislature.*"

Judicial support for the position taken by the city in the case at bar, that no dis-

tinction should be drawn between proprietary and governmental functions in construing a plain statute requiring notice by a claimant for damages against a municipality, does not rest upon dissenting opinions, however. The principle maintained by the city of Memphis has been sustained by the highest courts in Virginia, Minnesota, Washington, Florida, and California. O'Neil v. Richmond (1925) 141 Va. 168, 126 S.E. 56; Frasch v. New Ulm (1915) 130 Minn. 41, 153 N.W. 121, L.R.A.1915E, 749; Dickie v. City of Centralia (1916) 91 Wash. 467, 157 P. 1084; Sheer v. Everett (1925) 134 Wash. 385, 235 P. 789; Crumbley v. Jacksonville (1931) 102 Fla. 408, 135 So. 885, 138 So. 486, 487; Western Salt Co. v. San Diego (1919), 181 Cal. 696, 186 P. 345.

In the first-cited case, O'Neil v. Richmond, 141 Va. 168, 126 S.E. 56, 57, the plaintiff sued the municipality for damages for injury to real estate caused by defective water pipes owned and operated by the city. The plaintiff had failed to comply with the Virginia statute requiring notice of the claim to be given within six months. In rejecting the contention of the plaintiff that failure to comply with the statute constituted no bar to the action, because the city had committed a wrong in its private and proprietary, and not in its governmental capacity, the Virginia court said:

"The support, so far as we are advised, for the distinction claimed, is suggested by the cases of D'Amico v. Boston, 176 Mass. 599, 58 N.E. 158, where the language of the statute is not given, and Henry v. City of Lincoln, 93 Neb. 331, 140 N.W. 664, 50 L.R.A.(N.S.) 174. These cases appear to stand alone, and in the latter case there was a strong dissenting opinion. Generally, the courts have made no reference to such a distinction, but have confined themselves to construing the particular statute involved.

"The supremacy of the General Assembly in all respects, save as limited by the Constitution, is certainly well settled. [Citing Virginia cases.] Certainly this power may be exercised as to municipal corporations. They are created by law, all of their powers are derived from the statutes creating them, and all of their liabilities are thereby imposed. White v. Nashville, 134 Tenn. 688, 185 S.W. 721, Ann.Cas.1917D, 961."

It will be noted that the Virginia court cited White v. Nashville, 134 Tenn. 688, 185 S.W. 721, Ann.Cas.1917D, 960, in which the Supreme Court of Tennessee held constitutional the act of the General Assembly of Tennessee now under construction, in which the Legislature of Tennessee drew in terms no distinction between the proprietary and the governmental functions of a municipality.

Further quotation from the Virginia court is elucidating:

"The reasons for these statutes have been frequently indicated. They afford the city authorities the opportunity to investigate the circumstances, examine the locality in which the injury is alleged to have occurred, and to discover the witnesses promptly so as to ascertain the facts while their recollections are fresh. Such statutes tend to discourage and avoid the expense of litigation, because, if the investigation discloses legal liability, a prompt settlement is both proper and probable. They also tend to prevent perjury and fraud as well as to avoid injustice growing out of the failure of the witnesses to recollect clearly occurrences long past before they are called upon to testify, and thus better to safeguard against unfounded claims. Tonn v. City of Helena, 42 Mont. 127, 111 P. 715, 36 L.R.A.(N.S.) 1136; Weisman v. New York, 219 N.Y. 178, 114 N.E. 70, Ann.Cas. 1918E, 1023.

"In this case there is emphasis upon the fact that this injury is alleged to have occurred from the negligence of the city in connection with the water supply which is maintained by it. The case of Frasch v. New Ulm, 130 Minn. 41, 153 N.W. 121, L.R.A.1915E, 749, was a case in which the action was based upon illness caused by the use of contaminated water negligently supplied from waterworks owned and operated by the city. The point was there made that the requirement of notice under that statute should be confined to actions involving or pertaining to the public or governmental functions of the city, and not to cases of private endeavor which it might enter upon, such as the maintenance of waterworks, etc. The court, however, declined to sustain that contention, and interpreted the statute as applicable.

"The case of Henry v. Lincoln, supra, is referred to in the opinion, and it is said that that decision turns upon an interpretation of the Nebraska statute, and not upon

any constitutional limitation on the power of the Legislature.

"Condon v. Chicago, 249 Ill. 596, 94 N.E. 976, also either ignores or declines to apply this limitation.

"Of the power to impose such conditions there can be no fair question, and the proper inquiry in such cases is as to the true construction of the statute under review. Berger v. Salt Lake City, 56 Utah, 403, 191 P. 233, 13 A.L.R. 10; Sheehy v. City of New York, 160 N.Y. [139] 143, 54 N.E. 749.

"In Curry v. City of Buffalo, 135 N.Y. 366, 32 N.E. 80, this is said as to a similar charter provision: 'The action cannot be maintained unless notice of the intention to commence it, and of the time and place of the injury "shall have been filed with the counsel to the corporation," and a failure to file the notice furnishes a defense to the action. The filing of the notice is a condition precedent to the maintenance of the action. * * * The whole matter of the maintenance of this class of actions was within the control of the Legislature. It could refuse a right of action against municipalities for such injuries, and it could impose any conditions precedent to the maintenance of such actions.'

"And in MacMullen v. City of Middletown, 187 N.Y. 37, 79 N.E. [863] 864, 11 L.R.A.(N.S.) 391, it is said, with reference to the Curry Case, that: 'This statement of the rule was deliberate and, in my opinion, it is correct, when the nature and functions of municipal corporations are considered.'

"We conclude, then, that the mere fact that the negligence is alleged to have arisen out of the operation of the waterworks of the city is immaterial, and that such statutes can be made applicable to such actions as this, as well as to actions growing out of the strictly governmental functions of the city."

Frasch v. New Ulm, 130 Minn. 41, 153 N.W. 121, 122, L.R.A.1915E, 749, was a case in which an amended statute of Minnesota required notice of injury, to a municipality, whether the injury arose from negligence in the discharge of proprietary or governmental functions, and was an action to recover damages against the city for supplying contaminated water. The Minnesota case upheld the requirement of the statute as to notice, reasoning thus cogently:

"But it is said the provision with respect to written notice of claim should be confined to actions involving or pertaining to the public or governmental functions of a city, and not to causes arising out of the conduct of some private endeavor which it may choose to enter upon, such as the maintenance of waterworks or lighting systems. We have held municipal corporations to the same accountability for negligence in the conduct of enterprises other than strictly governmental that we exact from private corporations engaged in similar business. [Citing Minnesota cases.] And it may be conceded that, in respect to every injury resulting from a negligent operation of its system of waterworks, defendant is answerable in damages to the same extent as would be a private owner thereof. But, even so, the Legislature is not, because of similarity of liability, precluded from making distinctions between municipalities and private corporations in respect to conditions precedent to suit. When those conditions are complied with, the liability and redress are the same. This is a period when municipalities are not confined strictly to the functions of governmental agencies, but are permitted to embark in a variety of enterprises deemed beneficial and convenient to its inhabitants, upon the ground that cheaper and more efficient service can be rendered by the municipality than by persons or private corporations. Under this head come the so-called public utilities. This very need of intrusting a multitude of private or quasi private matters to municipalities, in addition to their purely public duties, is sufficient reason for the requirement of timely notice of a claim, before the one who has suffered from the negligence of the municipality may resort to the court for its enforcement. Every reason which calls for the service of a written notice of claim upon a municipality before suit in any case applies in this. It is as important that the head or administrative body of a city have notice of claim for negligent injury or damage caused by something connected with its water system as if the injury arose out of some negligent defect in its streets. The funds of a city must be used to pay the one claim, as well as the other. The purpose of notice is to enable a city to ascertain the facts and keep in touch with the evidence pertaining to the claim, so as to facilitate a just settlement, or, if that cannot be done, defend with effect. The Leg-

islature, having deemed it expedient and conducive to public welfare to permit municipalities to own and manage public utilities, may to a reasonable extent protect them against stale and long-hidden demands, and perhaps unnecessary lawsuits, by requiring timely notice as a condition precedent to suit. We do not think this arbitrary class legislation. There can be no claim that 30 days' time is unreasonably short in cases like the present. Tonn v. City of Helena, 42 Mont. 127, 111 P. 715, 36 L.R.A.(N.S.) 1136; Steltz v. City of Wausau, 88 Wis. 618, 60 N.W. 1054; McCue v. City of Waupun, 96 Wis. 625, 71 N.W. 1054, and O'Donnell v. City of New London, 113 Wis. 292, 89 N.W. 511, go to sustain the proposition that, in respect to demands arising outside of the purely governmental functions of cities, or outside of statutory obligations imposed upon them, the Legislature, in requiring service of notice of demand as a condition precedent to suit against them, is not improperly discriminating against individuals or private corporations owning and conducting like utilities.

"No case to which our attention has been called holds directly that upon constitutional grounds the Legislature may not place municipal owners and operators of public utilities, as respects conditions precedent to being sued, or as to limitation of time for suing them, in a different class from private concerns conducting like enterprises. As we read Henry v. Lincoln, 93 Neb. 331, 140 N.W. 664, 50 L.R.A.(N.S.) 174, the decision turns upon an interpretation of their statute, and not upon any constitutional objection. In construing the statute the court kept in mind three different situations in which a municipality may find itself, and therefrom draws the conclusion that it was not intended to require notice in causes or demands arising out of the permissive enterprises which a municipality may engage in, or stay out of, as it deems best, but only when the demands grow out of its negligent failure to discharge a duty imposed by statute, or where claims or contracts arise in the exercise of its governmental functions. The decision is in line with the construction placed by this court upon the provisions for notice existing in this state prior to the enactment of chapter 391, Laws 1913 (Gen. Stat.1913, §§ 1786–1789). Nor does D'Amico v. Boston, 176 Mass. 599, 58 N.E. 158, find constitutional objections. There a notice was required before suit only when the defect causing the injury was in a legal highway or street, and it was held that, since the locus in quo, though formerly a street, had been taken for a water basin, it was not a public highway, even though it was still used as such. An authority in point is Condon v. City of Chicago, 249 Ill. 596, 94 N.E. 976. It directly passed upon and sustained the constitutionality of a law which required notice of claim a condition precedent to bringing suit against a municipal corporation, although other persons or corporations carrying on the same kind of business as the one out of which the claim arose were subjected to suit without such precedent notice.

"In our opinion, the demurrer was well taken."

Crumbley v. City of Jacksonville (1931) 102 Fla. 408, 135 So. 885, 138 So. 486, 487, was a case in which the plaintiff insisted that the Florida statute requiring notice of damage should not be applied, because the city of Jacksonville, in operating a plant for the distribution of power, was engaged in a private or proprietary function, and not a governmental activity. The court refused to accept the argument as sound, and rendered a strong opinion to the contrary. The Supreme Court of Florida said:

"The main question which has been argued by counsel for the respective parties as to the legal sufficiency of the fourth count is based on the fact that said count entirely omits to allege that any notice whatever had been given to the defendant city as required by a provision on that subject in the city charter. Counsel for the city of Jacksonville, defendant in error here, contends that this omission was fatal to the legal sufficiency of said count, whereas counsel for plaintiff in error insists that the allegation in said count that the city was engaged in generating and selling electricity, as hereinabove quoted, rendered it unnecessary for plaintiff in error to give such notice or allege it in his declaration, upon the ground that the provision of the city charter with reference to notice is either unconstitutional and void in any case, or that it is not constitutionally applicable to cases based upon negligence of the city in carrying on the business of generating and selling electricity. While this question was not ruled upon on the former hearing, the contentions of counsel for plaintiff in error were summarized in the opinion of the court, and

we deem it unnecessary to repeat them here. * * *

"While the argument that, when a city is engaged in the business of generating and selling electricity, its liabilities for torts committed in the operation of such business should be governed in all respects by general law applicable to all persons and corporations engaged in such business, and that therefore a statutory requirement of notice as a condition precedent to suit against a city would constitute class legislation, is a very plausible argument, the fact remains that there are such vital differences and distinctions between municipal corporations and private corporations, or individuals, as to afford some reasonable basis for the Legislature to make a different classification and rule with reference to many matters affecting cities and towns which do not apply to private corporations or private persons, without offending against those provisions of our State and Federal Constitutions which in effect forbid class legislation and which guarantee the equal protection of the laws. Const. Declaration of Rights, § 12, and article 3, § 21; Const.U.S.Amend. 14. Thus, while a city may be engaged in the business of generating and selling electricity, it is not supposed to be so engaged primarily for profit, but to secure to its citizens, at a fair and reasonable cost, the benefit of what has become a necessary public utility, and, even though some incidental profits should result from such business, the funds thus produced are public funds of the city which can only be used by the city for legitimate municipal purposes, thus making it possible to reduce the amount of general taxation upon its citizens. Indeed there might be a serious question about the constitutional right of a city to engage even in a public utility business for the primary purpose of amassing profits. However, that question is not presented here, and we need not discuss it. Furthermore, the Legislature might reasonably deem it wise and necessary to throw certain safeguards around municipal corporations to protect them against unfounded or fraudulent claims, which safeguards might not be deemed necessary in order to afford protection to private corporations even when engaged in some one or more of similar activities. It might have been in the legislative mind that private corporations or individuals engaged in business for profit may be depended upon to take care of their own interests and make prompt and efficient investigation of all claims made or likely to be made against them. On the other hand cities, with miles of streets and electric lines, etc., cannot keep them under watch all the time, and, unless promptly notified of injuries received, or alleged to have been received, cities might frequently find themselves unable to ascertain the actual facts of bona fide claims, and seriously handicapped in defending against fraudulent claims. There are so many differences between public corporations on the one hand and private corporations and individuals on the other, and there being an express grant of broad powers to the Legislature in section 8 of article 8 of the Constitution with reference to municipal corporations, that we cannot see our way clear to hold that the Legislature was making an arbitrary and unreasonable classification when it provided that, as a condition precedent to suit, a party must give reasonable notice to the city of the nature and character of his claim and the circumstances under which it arose, so that the public funds of the city might be protected by ample opportunity for its officials to make investigation of the facts while there was yet opportunity to make that investigation efficiently and effectively."

The foregoing review of the state court authorities, from which rather elaborate quotations have been made because no decision of a United States court upon the point at issue has been produced by counsel for the contending parties, has convinced this court that the better reason sustains the view that no distinction between governmental and nongovernmental activity of a municipality should be read by the court into a clear-cut statute, requiring notice of injury resulting from "the negligent condition of any street, alley, sidewalk or highway of such municipality," as a condition precedent to bringing suit.

Independently of authority, this court would hold this view. The Tennessee statute is plain and unambiguous. It provides "That no suit shall be brought against any municipal corporation in this State on account of injuries received by person or property on account of the negligent condition of any street, alley, sidewalk, or highway of such municipality, unless within ninety days after such injury to the person or property has been inflicted; a written notice shall be served upon the Mayor

of said municipality stating the time and place where said injury was received, and the general nature of injury inflicted."

This court will not indulge the unwarranted speculation that the Legislature of Tennessee must have intended to except from the requirement of notice claims for injuries received from the operation of a municipal water plant. No such exception appears by any reasonable inference from the language of the statute.

Decisions of the Supreme Court and the Court of Appeals of Tennessee indicate the view that the operation of a water plant is a governmental function. Smiddy v. City of Memphis (1918) 140 Tenn. 97, 203 S.W. 512; State ex rel. v. City of Memphis (1923) 147 Tenn. 658, 251 S.W. 46, 27 A.L.R. 1257; Foster v. Water Company (1879) 3 Lea (71 Tenn.) 42; Yarbrough v. Louisville & N. R. Co. (1930) 11 Tenn.App. 456.

The cases cited by counsel for plaintiff from United States courts are to contrary effect. In Blair v. Byers (Oct. 1929) 35 F.(2d) 326, the Eighth Circuit Court of Appeals, in line with its earlier decisions in City of Winona v. Botzet, 169 F. 321, 333, 23 L.R.A.(N.S.) 204, and Omaha Water Co. v. City of Omaha, 147 F. 1, 12 L.R.A.(N.S.) 736, 8 Ann.Cas. 614, holds that the building and operation of a waterworks system by a municipality constitutes the exercise of a proprietary, rather than a governmental function. See, to same effect, Brush v. Commissioner of Internal Revenue (C.C.A.2) 85 F.(2d) 32, decided July 13, 1936.

In Flint v. Stone Tracy Co., 220 U.S. 107, 172, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312, the Supreme Court said: "It is no part of the essential governmental functions of a state to provide means of transportation, supply artificial light, water, and the like."

But, inasmuch as this court is unwilling by judicial ipse dixit to read into the Tennessee statute under construction an exception not found there, it is immaterial to decide in the instant case whether the operation by the city of Memphis of its water department at a profit to the taxpayers is governmental or proprietary in function.

The Tennessee statute before this court for interpretation was held constitutional in White v. Nashville, 134 Tenn. 688, 185 S.W. 721, Ann.Cas.1917D, 960. The Supreme Court of Tennessee has repeatedly upheld and applied the terms of the act in its requirement of ninety days' notice, and has upheld the denial to plaintiffs of the right of recovery, where the notice of injury required by the statute had not been given. Gilkey v. City of Memphis, 159 Tenn. 220, 17 S.W.(2d) 4; City of Knoxville v. Felding, 153 Tenn. 586, 285 S.W. 47, 48; Thompson v. Chattanooga, 143 Tenn. 477, 484, 226 S.W. 184; City of Nashville v. Black, 142 Tenn. 397, 405, 219 S.W. 1043, 12 A.L.R. 453; Hilson v. Memphis, 142 Tenn. 620, 221 S.W. 851; Hughes v. Nashville, 137 Tenn. 177, 192 S.W. 916; White v. Nashville, 134 Tenn. 688, 185 S.W. 721, Ann.Cas.1917D, 960.

In City of Knoxville v. Felding, supra, the highest court in Tennessee said: "The rigid application of statutes that require notice as a condition precedent to suit against the city, and the precision exacted as to time, place and nature of the injury, cannot be justified except upon the ground that originally the law forbade a recovery, and that the Legislature which could take away the remedy has annexed as a condition precedent to the right of recovery, the requirement of notice, and made mandatory a statement in the notice showing with precision the time, place, and nature of the injury. Hence, the courts say that, because the Legislature has required by a mandatory statute the notice of time, place, and nature of the injury as a condition precedent to the right of recovery, no person can avail himself of the benefit of the law without strictly observing it. Such is the view of the Tennessee courts, supported by the weight of authority throughout the United States."

In a quite recent decision, Bingamam, Com'r, v. Golden Eagle Western Lines, Inc. (March 30, 1936), 297 U.S. 626, 628, 56 S.Ct. 624, 80 L.Ed. 928, the Supreme Court of the United States adhered to the established doctrine that the construction by a state Supreme Court of the statutes of its own state controls in a federal court.

See, also, United States v. Kombst, 286 U.S. 424, 426, 52 S.Ct. 616, 76 L.Ed. 1201: Frost & Frost Trucking Co. v. Railroad Commission, 271 U.S. 583, 591, 592, 46 S. Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457; Green v. Lessee of Neal, 6 Pet. 291, 295, 298, 8 L.Ed. 402.

In Supreme Lodge, Knights of Pythias v. Meyer, 265 U.S. 30, 32, 44 S.Ct. 432, 68 L.Ed. 885, the Supreme Court, speaking through Mr. Justice Sutherland, said: "Under the settled rule of this Court, de-

clared so frequently and uniformly as to have become axiomatic, we must accept this decision of the highest court of the state fixing the meaning of the state legislation, as though such meaning had been specifically expressed therein. See, for example, Leffingwell v. Warren, 2 Black, 599, 603, 17 L.Ed. 261; Green v. Lessee of Neal, 6 Pet. 291, 297–300, 8 L.Ed. 402. And we follow the state construction, even though it may not agree with our own opinion. Supervisors Carroll County v. United States, 18 Wall. 71, 82 [21 L.Ed. 771]; Shelby v. Guy, 11 Wheat. 361, 367, 6 L.Ed. 495; Tioga R. Co. v. Blossburg & Corning R. Co., 20 Wall. 137, 143, 22 L. Ed. 331."

In Jones v. Prairie Oil & Gas Co. (decided January 24, 1927) 273 U.S. 195, 199, 200, 47 S.Ct. 338, 339, 71 L.Ed. 602, Mr. Justice Holmes, speaking for the unanimous Supreme Court, said: "But apart from that consideration no case yet has gone to the length of undertaking to correct the construction of State laws by State courts. The exclusive authority to enact those laws carries with it final authority to say what they mean. The construction of those laws by the Supreme Court of the State is as much the act of the State as the enactment of them by the Legislature. If we thought the decisions cited far more questionable than we do, we nevertheless should bow to them as binding upon a matter of local administration and of only local concern."

This court is not only bound by, but concurs in, the interpretation placed by the Supreme Court of Tennessee upon the Tennessee statute.

In Thompson v. Chattanooga, 143 Tenn. 477, 484, 226 S.W. 184, 186, the State Supreme Court said: "After a careful examination of the authorities bearing upon the question, we are of the opinion that the averment of notice was necessary to entitle the plaintiffs to maintain their suit and offer proof of notice. It is expressly provided by the statute that 'no suit shall be brought,' unless the notice is given. The effect of this language is to make the giving of notice a condition precedent to plaintiff's right to sue, and, the giving of notice being a condition precedent to the plaintiff's right to sue, a compliance with the statute must be averred in the declaration or complaint."

The declaration of the plaintiff Bettie May Collins filed in this cause fails to aver the giving of the required statutory notice of her injury. This failure constitutes a valid defense raised by the city of Memphis in its motion to dismiss.

Accordingly, for the reasons stated in this opinion, the motion to dismiss is sustained.