Rudolph W. MAIER, Appellant,

v.

CITY OF KETCHIKAN, a Municipal Corpo-
ration, and Don Bowey, Appellees.

No. 489.

Supreme Court of Alaska.

June 11, 1965.

charter of the City of Ketchikan. Section 5–20 provides:

*Claims for Injuries*

Section 5–20. The city shall not be liable in damages for injury to person or property by reason of negligence of the city unless, within four months after such injury occurs, the person damaged or his representative causes a written notice to be served upon an officer of the city upon whom process may be served. Such notice shall state that such person intends to hold the city liable for such damages and shall set forth substantially the time and place of the injury, the manner in which it occurred, the nature of the act or defect complained of, the extent of the injury so far as known, and the names and addresses of witnesses known to the claimant.

No person shall bring action against the city for damages to person or property arising out of any of the reasons or circumstances aforesaid unless such action is brought within the period prescribed by law, nor unless he has first presented to the city manager a claim in writing and under oath, setting forth specifically the nature and extent of the injury and the amount of damages claimed. The city manager shall promptly present such claim to the council for action.

Failure to give notice of injury or to present a claim within the time and in the manner provided, shall bar any action upon such claim.

This section shall not be deemed to waive any defense of immunity which the city may have from claims for damages arising out of negligence, but shall apply in all cases where such defense is not available to the city.

Ben T. Gray, Portland, Or., Roger G. Connor, Juneau, for appellant.

Robert H. Ziegler, Sr., Ziegler, Ziegler & Cloudy, E. E. Bailey, Stump & Bailey; Ketchikan, for appellees.

Before NESBETT, C. J., DIMOND, J., and HEPP, Judge.

DIMOND, Justice.

The main question here has to do with the interpretation and effect of the municipal

Appellant was severely injured when a metal survey rod he was holding came into contact with an electrical power line owned by the City of Ketchikan. Appellant presented to the city his notice of claim for injuries in accordance with the charter requirement, except that the notice was not given until more than a month following

expiration of the four month period for presenting claims as prescribed by the charter. The superior court held, in this action by appellant for personal injuries, that appellant's claim was barred under the charter because the notice of claim had been filed too late. Judgment was entered dismissing appellant's complaint, and this appeal followed.

Appellant contends that the notice of claim provision of the charter applies only to negligence arising out of the performance of governmental functions of the city, and not functions that are proprietary in nature such as the maintenance and operation of an electrical utility.

■ The charter speaks of negligence of the city and of damages for which the city may be responsible. It says nothing of the type of function engaged in by the city which may give rise to a claim of negligence and for damages. The purpose of the provision for filing notice is to enable the city to make a prompt investigation of claims and settle them without suit.[1] It is as desirable to effect that purpose when the city is engaged in an activity of a proprietary nature as when it is acting in a governmental capacity. In either event, damages resulting from negligence are chargeable against the city. We hold that section 5–20 of the Ketchikan city charter applies to any claim of negligence on the part of the city, regardless of whether the municipal function or activity out of which the claim arose is characterized as governmental or proprietary.[2]

■ Appellant contends that the charter requirement for giving notice of claim within four months after an injury occurs is void under AS 29.40.010[3] because it conflicts with state law establishing a two-year period of limitation for commencing a tort action.[4]

Neither the purpose nor the effect of the charter requirement is to limit the time within which an action may be commenced. The purpose, as we have already stated, is to enable the city to promptly investigate claims and settle them without suit.[5] The effect of requiring notice of claim within four months after injury is to impose a prerequisite to the right to commence an action.[6] The time for commencing the action is governed by state law, as the charter plainly recognizes.[7]

■ Appellant contends that his incapacity, which arose out of the injury on which his claim was based, excused his delay in filing a notice of claim. On this point

1. O'Neil v. City of Richmond, 141 Va. 168, 126 S.E. 56, 57 (1925); Crumbley v. City of Jacksonville, 102 Fla. 408, 138 So. 486, 489 (1931); Bituminous Cas. Corp. v. City of Evansville, 191 F.2d 572, 573–574 (7th Cir. 1951); Caron v. Grays Harbor County, 18 Wash.2d 397, 139 P.2d 626, 631, 148 A.L.R. 626, 633–634 (1943); Bosin v. Minneapolis, St. Paul & Sault Ste. Marie R.R., 183 F.Supp. 820, 823 (E.D.Wis.1960) aff'd, 297 F.2d 583 (7th Cir. 1961); 18 McQuillan, Municipal Corporations § 53.153, at 556–558 (3d rev.ed.1963).

2. Thomas v. City of Coffeeville, 145 Kan. 588, 66 P.2d 600–601 (1937); Collins v. City of Memphis, 16 F.Supp. 204, 211–212 (W.D.Tenn.1936); Western Salt Co. v. City of San Diego, 181 Cal. 696, 186 P. 345, 346 (1919).

3. AS 29.40.010 provides:
   "A city of the first class may adopt a charter for its own government, sub- ject to the constitution and not in conflict with the laws of the state."

4. AS 09.10.070.

5. Cases cited in note 1 *supra*.

6. Kelleher v. Ephrata School Dist. No. 165, 56 Wash.2d 866, 355 P.2d 989, 993 (1960); Eby v. City of Lewistown, 55 Mont. 113, 173 P. 1163, 1165 (1918); Galloway v. City of Winchester, 299 Ky. 87, 184 S.W.2d 890, 891 (1944).

7. The second paragraph of Section 5–20 of the Ketchikan charter provides in part:
   No person shall bring action against the city for damages * * * unless such action is brought *within the period prescribed by law*, nor unless he has first presented to the city manager a claim in writing. * * * (Emphasis added.)

there is disagreement among the state courts.[8] Some hold that if the law requiring the giving of notice within a prescribed time does not excuse those disabled, then the courts may not engraft an exception on the law and disability will not excuse a late filing.[9] This was the view of the trial court in this case. Other courts have held that disability is an excuse to late filing of a claim, because of the manifest injustice of denying relief to an injured person where the injury so disabled him that he was unable to present his claim within the time required.[10]

We adopt the view that failure to file a notice of claim within the time prescribed by the city charter may be excused because of the disability from which the claim arose and until a reasonable time after the disability ceases. The essential justice of such a view persuades us to adopt it for this jurisdiction. If, as appellant contends, he was injured by the negligence of the city, it would be basically unfair to deprive him of recourse to the courts if the injuries suffered prevented him from complying with the notice requirements of the charter. To permit such a situation to occur would make it possible for the city to take advantage of and benefit from its own wrong. This would not be consistent with our traditional conception of fair play and substantial justice.

■ Under the charter, appellant's notice was due to be filed no later than August 13, 1962. It was actually filed either on September 18 or October 1, 1962. In opposition to appellees' motion to dismiss the complaint, and in an effort to show an excuse for the late filing of his claim, appellant submitted affidavits which alleged the following:

1. Appellant was totally disabled physically all the time he was in the hospital, which was until August 31, 1962.

2. When appellant's counsel talked to him on July 21, 1962, appellant was vague and confused.

3. During appellant's stay in the hospital, both arms and hands were partially paralyzed and almost without feeling.

4. As late as August 10, 1962, appellant underwent his seventh operation which consisted of transplanting skin from his thigh to his left foot and toes.

5. During his hospitalization, appellant was constantly given medication and drugs and shots to relieve pain, and this continued through August 29, 1962.

6. Appellant was given daily therapy and was under strict supervision of the doctors at the hospital until August 29, 1962.

7. During his stay in the hospital, and up until about August 21, 1962, appellant felt very vague about everything, did not think clearly, and had severe pain; his memory was poor, and he had unclear ideas about the passage of time.

The foregoing allegations raise issues of fact that must be determined, on a remand of this case, by the trier of fact. The issues to be determined are whether appellant's injuries were such that reasonably he was incapacitated from giving notice of his claim for damages within the time prescribed by the city charter, and if so, whether his notice of claim was presented within

---

8. Annot., 34 A.L.R.2d 725, 740–751 (1954).

9. Daniel v. City of Richmond, 199 Va. 490, 100 S.E.2d 763, 765–766 (1957); Robinson v. City of Memphis, 171 Tenn. 471, 105 S.W.2d 101 (1937); Waite v. Orgill, 203 Tenn. 146, 310 S.W.2d 179 (1958); Sherfey v. City of Brazil, 213 Ind. 493, 13 N.E.2d 568, 572–574 (1938).

10. Carter v. City of Greensboro, 249 N.C. 328, 106 S.E.2d 564, 567 (1959); Burk-

ard v. City of Dell Rapids, 76 S.D. 56, 72 N.W.2d 308, 310 (1955); City of Waxahachie v. Harvey, 255 S.W.2d 549, 551 (Tex.Civ.App.1953); Schulstad v. City & County of San Francisco, 74 Cal.App. 2d 105, 168 P.2d 68, 69 (1946); City of Colorado Springs v. Colburn, 102 Colo. 483, 81 P.2d 397, 398 (1938); Randolph v. City of Springfield 302 Mo. 33, 257 S.W. 449, 452, 31 A.L.R. 612, 615–617 (1923), rev'd on another point, 275 S. W. 567 (Mo.Ct.App.1925).

a reasonable time after the incapacity ceased.[11]

On appellees' motion, the court dismissed the third count of appellant's amended complaint which alleged that the city's maintenance of high voltage electrical wires was a nuisance that caused appellant special injury. Appellant contends that the court erred. The question here is whether appellant had stated a claim for relief based on the existence of a public nuisance.

To establish a claim based on public nuisance, it is not sufficient merely to show that one was injured by the creation or maintenance of some physical condition which would cause injury to a person coming into contact with it. It must also be shown that such condition would be injurious to those who came in contact with it in the exercise of a public or common right.[12]

Appellant alleged that the city's electric wire was maintained in such a manner that "persons on the premises were in danger of coming in contact with it", and that it was "dangerous to persons working underneath or near it." It is conceivable that a state of facts could be proved which would show that the "persons" mentioned by appellant would be on the premises, and in danger of being injured by the electric wire, in the exercise of rights common to the public in general. The fact that it is possible to prove a claim based on the facts alleged is all that is necessary to make the statement of claim good as against a motion to dismiss.[13] The court erred in dismissing the third count of appellant's amended complaint.

In the second count of his amended complaint appellant alleged that at the time of the accident state law required electrical companies and cooperatives to conform to standards set forth in the National Electrical Safety Code, and that the city had maintained its high voltage electrical lines in violation of such standards. Appellees moved to dismiss for failure to state a claim on the ground that the National Code, incorporated into state law, pertained only to electrical cooperatives, and not to the city-owned Ketchikan Public Utilities which was not a cooperative. The motion to dismiss was granted, and appellant claims this was error.

From the briefs of the parties it now appears that appellees were mistaken in arguing to the trial court that the National Code was not generally applicable in Alaska as appellant had alleged. Appellees now concede that the code applied, not exclusively to electrical cooperatives, but generally in the construction, maintenance and operation of all electrical equipment, supply and communication lines. Had the judge been made aware of this fact he undoubtedly would have denied the motion to dismiss, for appellant's claim was sustainable in that it alleged a statutory standard of care and injury due to a violation thereof. The possibility that the city's electrical wire which injured appellant was not technically a supply or communication line covered by the code, as appellees now contend in their brief on this appeal, is a matter with which we cannot be concerned. Our only concern on this appeal is with the pleadings as they existed at the time the lower court's ruling was made. The dismissal of the second

11. Burkard v. City of Dell Rapids, 76 S.D. 56, 72 N.W.2d 308, 310 (1955); Carter v. City of Greensboro, 249 N.C. 328, 106 S.E.2d 564, 567 (1959); Kunkel v. City of St. Louis, 349 Mo. 1121, 163 S.W.2d 1014, 1016 (1942).

12. Prosser, Torts § 71, at 401–402 (2d ed. 1955); Restatement, Torts ch. 40, pp. 216–218 (1939); Higgins v. Connecticut Light & Power Co., 129 Conn. 606, 30 A.2d 388, 391 (1943); Hassett v. Palmer, 126 Conn. 468, 12 A.2d 646, 651 (1940);

City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30, 34 (1938); Dean v. State ex rel. Anderson, 151 Ga. 371, 106 S.E. 792, 793, 40 A.L.R. 1132, 1136 (1921); Nolan v. City of New Britain, 69 Conn. 668, 38 A. 703, 706 (1897).

13. Lieb v. Interior Enterprises, Inc., 395 P.2d 32, 36 (Alaska 1964); 1A Barron & Holtzoff, Federal Practice § 356, at 360–361 (rev. ed. 1960); 2 Moore, Federal Practice § 12.08, at 2245 (2d ed. 1964).

count of appellant's amended complaint must be set aside.

Appellant's final point is that error was committed when the superior court at Juneau granted appellees' motion for a change of venue of this action to Ketchikan, and when the superior court at Ketchikan denied appellant's motion to change the venue back to Juneau.

■ Standards pertaining to change of venue are prescribed by statute.[14] Within the boundaries of those standards, the decision as to whether venue will be changed is within the sound discretion of the superior court.[15]

■ We find no abuse of discretion here. The decision we are asked to review places the trial of this case at Ketchikan. The accident occurred in that area. A view of the premises by a Ketchikan jury might be appropriate, as appellees have asserted by affidavit in support of their motion to place the venue at Ketchikan. Appellees have also alleged by affidavit that inconvenience and hardship would result to them by being required to transport to Juneau as witnesses certain key personnel of the city, whose presence in Ketchikan was important to the proper operation of the city's electrical utility. These are factors which the superior court properly could have considered in ex-

ercising its discretion to place venue of the action at Ketchikan.

As against the foregoing considerations favorable to appellees' position, appellant contends that an impartial trial cannot be had in Ketchikan. His reasons are that most of the prospective jurors are taxpayers and residents of Ketchikan and would have an interest of a financial nature in the outcome of the case, and that the jurors also are customers of the city-owned Ketchikan Public Utilities and it might appear to them that a large judgment for appellant would increase the electrical rates that they would be obliged to pay.

■ We hold that the factors mentioned by appellant are not in themselves sufficient to show that an impartial trial cannot be had in Ketchikan, so that it would be held an abuse of the trial court's discretion to refuse to change the venue to the City of Juneau or some other place.[16] If in order to require a court to change venue it was only necessary to show that an action was one against a municipality and that the prospective jurors were taxpayers or users of a municipal utility, it would mean that no action could be tried in the municipality involved over a plaintiff's objection, but would have to be sent elsewhere for trial. This would not be in the best public interest, be-

14. AS 22.10.040 provides:
"The superior court in which the action is pending may change the place of trial in an action from one place to another place in the same judicial district or to a designated place in another judicial district for any of the following reasons:
"(1) when there is reason to believe that an impartial trial cannot be had;
"(2) when the convenience of witnesses and the ends of justice would be promoted by the change;
"(3) when for any cause the judge is disqualified from acting, but if the judge of another judicial district is assigned to try the action, no change of place of trial need be made;

"(4) if the court finds that the defendant will be put to unnecessary expense and inconvenience, and if the court finds that the expense and inconvenience was intentionally caused, the court may assess costs against the plaintiff."

15. Brown v. Woodring, 174 F.Supp. 640, 644 (M.D.Pa.1959); Christopher v. American News Co., 176 F.2d 11 (7th Cir. 1949); Annot., 74 A.L.R.2d 16, 35 (1960).

16. Carter County v. Cambrian Corp., 143 Mont. 193, 387 P.2d 904, 906 (1963); Pennsylvania R.R. v. City of Reading, 254 Pa. 110, 98 A. 791, 792 (1916).

cause it would result in imposing the burden of jury duty upon the people of a community that has no relation to the litigation. As the United States Supreme Court has stated:

> "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." [17]

We find no reason to disturb the superior court's exercise of discretion as to the venue of this action.

The judgment dismissing appellant's complaint and the orders sustaining appellees' motions to dismiss the second and third counts of appellant's amended complaint are reversed. The orders changing venue of the action from Juneau to Ketchikan and denying appellant's motion for change of venue from Ketchikan to Juneau are affirmed. The case is remanded for further proceedings not inconsistent with this opinion.

17. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055, 1062–1063 (1947).